Not For Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 15-1850

UNITED STATES OF AMERICA,

Appellee,

v.

COREY EUSTIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Kim P. Bonstrom and Bonstrom & Murphy, on brief for appellant.
Renée M. Bunker, Assistant United States Attorney, and Thomas E. Delahanty II, United States Attorney, on brief for appellee.

February 28, 2017

**TORRUELLA, Circuit Judge**.  Defendant Corey Eustis appeals his sentence for possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence. We affirm.

BACKGROUND

On August 26, 2012, Eustis accidentally shot himself with a .22 caliber pistol while sitting near a campfire with his girlfriend.  Based on information provided by the girlfriend, officers searched a wooded area near Eustis's residence and found the pistol and two other firearms.  After a bench trial, Eustis was convicted of one count of possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).

The district court held a sentencing hearing, at which it ruled that Eustis had an adjusted offense level of eighteen under the United States Sentencing Guidelines (the "Guidelines"). It also determined that Eustis had a criminal history category ("CHC") of III, leading to a recommended Guidelines sentence of thirty-three to forty-one months.

The district court then found facts related to the Government's request for an upward departure.  First, it found that Eustis had brought the pistol to the campfire "to intimidate" his girlfriend "during an argument," making his possession offense

-2-

more serious than a normal possession conviction. It also determined that, during Eustis's pretrial detention, he called his girlfriend and convinced her to write a letter to the district court recanting her prior truthful statements. The district court also looked at the facts surrounding three of Eustis's prior assault convictions against domestic partners, including one in which he threatened a girlfriend with a loaded pistol, and found that they "portray[ed] a person who is very dangerous to intimate partners." Finally, the district court discussed two incidents in which Eustis threatened a girlfriend, including one in which he used "a firearm in a threatening manner," but for which he was not convicted.

Examining these facts, the district court determined that "the need to impose a sentence that reflects the seriousness of this crime and . . . protects the public and, in particular, [Eustis's] intimate partners" required an above-Guidelines sentence "on the grounds that . . . [Eustis's] criminal history [was] understated." After applying the departure, the district court sentenced Eustis to fifty-one months' imprisonment.

Eustis timely appealed his sentence.

## ANALYSIS

Eustis's primary argument is that the district court committed procedural error by relying on prior convictions, and

the "nature" of those convictions, that were already factored into his CHC.

> A sentence is procedurally sound so long as the district court did not commit a procedural error in arriving at the sentence. Examples of procedural errors include: failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range. When assessing procedural reasonableness, our abuse of discretion standard is multifaceted. We review factual findings for clear error, arguments that the sentencing court erred in interpreting or applying the guidelines de novo, and judgment calls for abuse of discretion simpliciter.

United States v. Nelson, 793 F.3d 202, 205-06 (1st Cir. 2015) (alteration omitted) (quoting United States v. Trinidad-Acosta, 773 F.3d 298, 308-09 (1st Cir. 2014)).

The Guidelines allow an upward departure "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). The Guidelines list five nonexclusive circumstances that may warrant an upward departure, primarily prior conduct that would not be captured when calculating the defendant's CHC. See id. § 4A1.3(a)(2).

Eustis contends that the district court did not base its upward departure on circumstances that fit within or were analogous

-4-

to those listed in the Guidelines. Rather, Eustis asserts, it relied "exclusively" on the facts underlying his criminal convictions, but those convictions were already considered in calculating his CHC. This was error, according to Eustis, because, although the Guidelines' five circumstances are nonexclusive, they are "all of a particular type: . . . crimes or conduct that the criminal history calculation instructions . . . fail specifically to consider." United States v. Morrison, 946 F.2d 484, 496 (7th Cir. 1991). Eustis's prior convictions were used to calculate his CHC, and Eustis argues that this type of "double-counting" is impermissible, citing to cases from the Seventh and Tenth Circuits.

Even assuming that it would have been error for the district court to base its departure solely on the facts that formed the basis for Eustis's prior convictions,[1] that is not what happened here. Rather, the district court also considered two uncharged incidents of domestic assault, Eustis's "intimidating" calls to his girlfriend from jail in which he convinced her to recant her prior statements, and the fact that Eustis brought the pistol to the campfire "to intimidate" his girlfriend before

---

[1] We note that in other contexts, we have stated that "double-counting is less sinister than the name implies" because different Guidelines "account for different sentencing concerns." United States v. Wallace, 573 F.3d 82, 92 (1st Cir. 2009).

accidentally shooting himself.[2]  The Guidelines specifically provide that the district court may rely on "information concerning . . . [p]rior similar adult criminal conduct not resulting in a criminal conviction" to make an upward departure.  U.S.S.G. § 4A1.3(a)(2)(E).  The district court did that here, and so it did not abuse its discretion in applying an upward departure.

Separately, Eustis maintains that the district court did not adequately explain why it chose a sentence of fifty-one months. The district court increased Eustis's CHC from level III to level IV, resulting in a recommended sentencing range of forty-one to fifty-one months.  See id. § 5A.  It explained, in great detail, why it considered Eustis's actions more egregious than a standard conviction for possession of a firearm and Eustis himself a danger to society and likely to recidivate.  That explanation was sufficient to justify a sentence at the maximum of the recommended Guidelines range.[3]

_____

[2]  Eustis retrieved the pistol from the house, loaded it, and brought it out to the fire during the argument.  Eustis was also drinking and had a prior history of using weapons to intimidate his significant others.  Based on those facts, it was not clear error for the district court to find that Eustis "intended to use it to intimidate" his girlfriend, as Eustis argues.

[3]  Because we do not find that the district court abused its discretion in sentencing Eustis, we need not reach his argument that it sentenced him in an improper sequence.  Eustis admits that this argument applies only "if this Court agrees with one or more of" Eustis's other arguments.

## CONCLUSION

For the reasons stated, we affirm Eustis's sentence.

**Affirmed.**